IN THE UNTIED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JOSELYN KELLY                                                           PLAINTIFF

V.                                            CIVIL ACTION NO.: 3:19-CV-69-SA-JMV

AES ENTERPRISES, INC.                                         DEFENDANT

ORDER AND MEMORANDUM OPINION

Joselyn Kelly filed a Complaint [1] on March 29, 2019 alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964. Presently before the Court is the Defendant's Motion for Summary Judgment [53] seeking dismissal of the Plaintiff's claim. The issues are fully briefed and ripe for review.

*Factual and Procedural Background*

Joselyn Kelly, an openly transgender female[1], applied for an Area Supervisor position with AES Enterprises, Inc., ("AES") sometime before January of 2019. AES is a company that owns and operates several McDonald's restaurants in Mississippi. Kelly attached her resume, which listed her work experience, level of education, skills, and licenses, to her application. Under the education section of her resume, Kelly listed a Master's in Business Administration. It appeared on her resume as if she began the program in August 2008 and finished in June 2014. In addition, Kelly indicated that she worked at Wendy's from April 2005 until October 2018 as an Area Supervisor. According to the Elizabeth Smith, a co-owner of AES, the company was interested in filling the Area Supervisor position with someone with an MBA.

---

[1] Although the Plaintiff's gender assigned at birth was male, she identifies as a black female. As a transgender female, the plaintiff appears and dresses as a female. Out of respect for the Plaintiff, the Court will refer to Kelly as she does in her briefing.

After applying, Kelly received a call from Andrew Smith, the other co-owner of AES, inquiring about her experience. Smith also scheduled an interview for Kelly. The owners interviewed Kelly after Christmas 2018 to discuss her resume and qualifications for the position. Kelly testified in her deposition that, during the interview, the owners were mostly concerned with her work history, not her educational background. Notwithstanding, Kelly, although admitting in her deposition that anybody who looked at her resume would believe she obtained an MBA, failed to inform the owners that she never completed the MBA program. Again, Kelly claims she did not clarify this point because the owners were more focused on her work history than her educational background.

AES offered the job to Kelly, and she accepted. Before she began her training, Kelly informed AES's owners and human resources manager that she was transgender. According to Kelly, the owners did not respond negatively. In fact, they informed her that AES does not tolerate unlawful discrimination of any kind. Kelly also received an employee handbook outlining AES's anti-discrimination policy and ways to report employee grievances. In addition to AES's policies prohibiting unlawful discrimination, Elizabeth Smith testified that each restaurant had a visible sign throughout the workspace indicating AES's prohibition of discrimination and listing a hotline for harassment complaints and grievances.

Kelly began her training at multiple restaurants managed by AES. According to AES, a supervisor must be trained to work every workstation within the restaurant before being able to adequately supervise others. Kelly admitted that she was familiar with this practice and that it was standard procedure when a new hire, who has never worked for the company, starts training. She testified that "even though food is food", each organization has their own culture and way of doing things and, in order to effectively manage other employees, a supervisor must know how to

perform each job properly. At some point during her one-month tenure with AES, Kelly became upset because she claimed she was continuously assigned to do work typically reserved for entry-level employees. AES alleges that Kelly did not perform well. In addition to her alleged unwillingness to work a full shift, AES claims that Kelly often lost her temper with customers and co-workers, walked out during lunch rush, complained about the duties assigned, and did not master the individual workstations as required in her training. Kelly denies these claims and contends that she was assigned menial tasks in an effort to discriminate against her.

Kelly also alleges that she endured harsh discrimination while working for AES. She claims that several of her co-workers and the district manager refused to address her by her preferred pronoun. Instead, she alleges that they referred to her as "it" or "faggot". Kelly claims that on one occasion, her manager commented that "transgenders were an abomination." Kelly also alleges that she was called "Juwanna Mann."[2] All of these actions, Kelly contends, began after she informed AES that she was transgender. AES claims that they never received any complaints regarding the alleged comments made towards Kelly.

After Kelly showed no improvements in her performance, AES gave her a choice of either resigning and receiving a small payment in exchange for releasing any legal claims she may have against AES *or* working under a performance improvement plan. Kelly chose to voluntarily resign but refused to waive any potential legal claims against AES in exchange for the severance payment.

A day after she resigned, Kelly filed a Charge of Discrimination with the EEOC alleging discrimination based on sex. She then filed her Complaint [1] in this Court against McDonald's USA, LLC, McDonald's Corporation, AES Management Inc., Elizabeth Smith, Andrew Smith, and AES Enterprises, Inc. The parties later filed a Joint Stipulation of Dismissal [24] of several

---

[2] In the 2002 movie *Juwanna Mann*, "a basketball star was booted out of the NBA when his on-court antics went too far, so he posed as a woman and joined the WUBA." *See* www.imdb.com/title/tt0247444/

defendants, leaving AES Enterprises, Inc. as the sole defendant. AES filed a Motion for Summary Judgment [53] seeking dismissal of the Plaintiff's discrimination claim against it. The issues are ripe for adjudication.

*Legal Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Discussion*

Kelly's primary claim is that she was discriminated against for failure to conform to gender stereotypes. She claims that this constitutes unlawful discrimination on the basis of sex under Title VII of the Civil Rights Act of 1964. The Defendant argues that Kelly's complaint attempts to circumvent the scope of Title VII by disguising a sexual orientation discrimination claim as a sex discrimination claim. AES argues in its motion that Kelly is unable to establish a *prima facie* case of discrimination on the basis of sex and thus summary judgment should be granted.

"In passing Title VII, Congress made the simple but momentous announcement that sex, race, religion, and national origin are not relevant to the selection, evaluation, or compensation of employees." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 239, 109 S.Ct. 1775, 1784, 104 L. Ed. 2d 268 (1989) (*citing* 42 U.S.C.A. § 2000e-2(a)(1)). "Yet, the statue does not purport to limit the other qualities and characteristics that employers may take into account in making employment decisions." *Id*. Consequently, the "balance between employee rights and employer prerogatives turns out to be decisive" in employment discrimination cases. *Id*.

Litigation concerning the reach of Title VII spans back to at least the late seventies. In *Smith v. Liberty Mutual Insurance Company*, the plaintiff "was not discriminated against because he was male, but because as a male, he was thought to have those attributes more generally characteristic of females and epitomized in the descriptive 'effeminate'." 569 F.2d 325, 327 (5th Cir. 1978). The Court held in *Smith* that a plaintiff who was discriminated for having less masculine characteristics could not enjoy the protections of Title VII. *Id*. The Fifth Circuit doubled down on this holding in *Blum v. Gulf Oil Corporation* where it held that discrimination on the basis of sexual orientation is not prohibited by Title VII. 597 F.2d 936 (5th Cir. 1979). A few years later, the Supreme Court interpreted Title VII to have a more expansive reach when it held in *Price*

5

*Waterhouse* that discrimination for failure to conform to gender stereotypes is discrimination on the basis of sex. *Id.* Although contrary to its opinion in *Smith,* the Fifth Circuit recently applied the *Price Waterhouse* rule in *E.E.O.C. v. Boh Brothers Construction Company, L.L.C.*, finding that plaintiffs could rely on gender-stereotyping evidence to show that same-sex discrimination occurred "because of sex" in accordance with Title VII. 731 F.3d 444 (5th Cir. 2013).

In the past few years, cases have emerged forcing courts to re-consider Title VII's protections beyond the original concept of sex discrimination outlined in earlier cases. Federal circuit courts disagree about the statute's scope. In *Hively v. Ivy Tech Community College of Indiana*, the Seventh Circuit held that discrimination on the basis of sexual orientation is a form of sex discrimination prohibited by Title VII. 853 F.3d 339 (7th Cir. 2017). In similar fashion, the Second Circuit held in *Zarda v. Altitude Express, Incorporated* that sexual orientation discrimination is motivated, at least in part, by sex and is thus a subset of sex discrimination for the purposes of Title VII. 883 F.3d 100 (2nd Cir. 2018). The Fifth Circuit, citing to *Blum,* categorically refused to consider transgender status as a protected class under Title VII. *See Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 330 (5th Cir. 2019) (considering sexual orientation and transgender status the same for the purposes of Title VII analysis).

In the Court's view, transgenderism is by definition a failure to conform to gender stereotypes. Thus, when a transgender plaintiff claims they were discriminated against for failing to conform to gender stereotypes, it appears that this Court should apply Fifth Circuit precedent in *Boh Brothers* and Supreme Court precedent in *Price Waterhouse*. Those cases held that Title VII prohibits discrimination against employees for failure to conform to gender stereotypes. While the Court acknowledges that *Wittmer* and *Blum* are still good law, the cases are distinguished from *Boh Brothers*. *Blum* did not address the use of gender nonconformity evidence to establish a claim

6

of sex discrimination. *See Blum*, 597 F.2d at 936. *Wittmer*, on the other hand, addressed whether Title VII prohibited discrimination based on transgender status without considering whether that discrimination, in turn, was for a failure to conform to gender stereotypes. *See Wittmer*, 915 F.3d 328. *Boh Brothers*, however, is similar to the case at hand. In *Boh Brothers*, the crew's superintendent engaged in same-sex harassment against the plaintiff by referring to him in raw homophobic epithets and lewd gestures. *See Boh Brothers*, 731 F.3d at 444. This conduct, according to the Fifth Circuit, is prohibited under Title VII. *Id*. Although the Defendant argues that the Plaintiff's claim is not viable, the Court finds that the Fifth Circuit's ruling in *Boh Brothers* allows the Plaintiff to use evidence of discrimination based on gender nonconformity to establish a discrimination claim on the basis of sex.[3]

"To establish a *prima facie* case of discrimination, the plaintiff must either present direct evidence of discrimination or, in the absence of direct evidence, rely on circumstantial evidence using the *McDonnell Douglas* burden shifting analysis." *Wittmer*, 915 F.3d 328, 332 (5th Cir. 2019). Whether through direct or circumstantial evidence, the plaintiff carries the burden to prove that (1) she belongs to a protected group; (2) she was qualified for her position; (3) that she was dismissed or suffered an adverse employment action; and (4) that the defendant sought to replace her with someone outside her protected group. *See Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). Should the Plaintiff meet her burden, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See id*. Once the defendant has articulated a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to prove that the defendant's stated reason is not the true reason or is pretextual. *Id*.

---

[3] Whether transgender status is a protected class under Title VII is an issue currently pending before the Supreme Court in *R.G. & G.R. Harris Funeral Home Inc. v. Equal Employment Opportunity Commission*, No. 18-107.

Kelly is a member of a protected class as she is claiming discrimination on the basis of sex. *See* 42 U.S.C.A. § 2000e-2(a)(1) (prohibiting discrimination on the basis of sex). Also as discussed above, Kelly's claim that she was discriminated for failure to conform to gender stereotypes is a claim of discrimination on the basis of sex. *See Price Waterhouse*, 490 U.S. at 239, 109 S.Ct. 1775.

Next, Kelly must establish that she was qualified for her position. Elizabeth Smith, a co-owner of AES, stated under oath that AES wanted to fill the position with "someone with the skills possessed by an MBA degree holder." *See* Affidavit of Elizabeth Smith [54-3]. Kelly listed an MBA in her educational background on her resume when she applied. Although Kelly admittedly never actually completed her MBA, she elected not to make AES aware of this fact before they offered her the job. Elizabeth Smith claims that she learned during the course of this lawsuit that Kelly did not have an MBA and that had AES learned it earlier, she would have been terminated for lying during her interview process and for a lack of qualifications. *See id*.

Neither party attached the job posting to their filings. As noted above, the Defendant did provide a sworn affidavit addressing the requisite qualifications for the job. The Plaintiff, however, provided nothing to rebut the contentions made in the affidavit. Thus, the only summary-judgment evidence on this issue that may properly be considered by the Court at this stage in the proceedings is Elizabeth Smith's affidavit. While the Plaintiff claims that AES did not require an MBA, that assertion is not supported by any summary judgment type evidence. *See Celotex*, 477 U.S. at 322 (holding that the plaintiff must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'").

The Plaintiff also claims that AES cannot use after-acquired evidence considering that it did not learn about the incomplete MBA program until after they offered her the job and after her resignation. "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it

8

must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 363, 115 S.Ct. 879, 887, 130 L. Ed. 2d 852 (1995). Elizabeth Smith states in her Affidavit that "had AES learned that Ms. Kelly did not have an MBA during her employment, she would have been terminated immediately for two reasons . . . First, Ms. Kelly lied during the interview process about her educational background . . . Second, Ms. Kelly was hired as an area manager because of her alleged educational background." *See* Affidavit of Elizabeth Smith [54-3]. The Court concludes that based on this sworn testimony which was not rebutted with any summary judgment type evidence, AES has satisfied the above-referenced test required for the use of after-acquired evidence. Even viewing the facts in the light most favorable to the Plaintiff, Kelly has failed establish any genuine disputes of material fact as to whether she was qualified for the position.

Assuming, arguendo, that Kelly could prove that she was qualified, she cannot establish that she was subjected to an adverse employment action. In her briefing, Kelly claims that she was constructively discharged. "The whole point of allowing an employee to claim 'constructive discharge' is that in circumstances of discrimination so intolerable that a reasonable person would resign, [courts] treat the employee's resignation as though the employer actually fired [her].'" *Green v. Brennan*, 136 S.Ct. 1769, 1780, 195 L. Ed. 2d 44 (2016) (*quoting Pennsylvania State Police v. Sunders*, 542 U.S. 129, 141-43, 124 S.Ct. 2342, 159 L. Ed. 2d 204 (2004)). To determine whether conditions are intolerable enough, courts do not delve into the employer's state of mind or purpose. *See Shawgo v. Spradlin*, 701 F.2d 470, 481 n. 12 (5th Cir. 1983). Instead, the Court is to focus on whether "the employer made conditions intolerable." *Id*. First, the Court notes that Kelly did not point to any intolerable acts by AES or its co-owners. All alleged discriminatory acts

9

were perpetrated by her co-workers. In addition, when Kelly complained about work, the owners took steps to remedy her problems. Kelly was reassigned to the Oxford restaurant to continue her training. Most notable, however, is AES's offer to allow Kelly to continue working under a work improvement plan as an alternative to termination. Kelly refused to accept this offer and decided to voluntarily resign. The Plaintiff does not assert sufficient facts to establish that the employer made conditions so intolerable that a reasonable person would have resigned. Thus, no constructive discharge.

Finally, as to the fourth element, there is no evidence that AES attempted to replace Kelly with someone outside her protected class. Elizabeth Smith stated in her Affidavit that "the position of area manager [supervisor] was never filled after Ms. Kelly's voluntary resignation . . . The position remains unfilled to date, and AES is not actively searching for someone to fill that position." *See* Affidavit of Elizabeth Smith [54-3]. The Plaintiff has not put forth any evidence to refute this claim, hence failing to establish this element.

Even viewing the facts in the light most favorable to the Plaintiff, she has failed to establish a genuine dispute of material fact as to whether she was subjected to discrimination on the basis of sex. Consequently, the Plaintiff's claim cannot survive summary judgment.

*Conclusion*

For all the reasons discussed above, the Defendant's Motion for Summary Judgment [53] is GRANTED and the Plaintiff's claim against AES Enterprises, Inc., is dismissed *with prejudice*. This case is closed.

SO ORDERED this, the 11th day of June, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE